IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RONALD LEON GRANT, <br> (FORMERLY # 315063), <br><br> Plaintiff, <br><br> vs. <br><br> SUMTER COUNTY; <br> SUMTER CITY POLICE DEPT.; <br> SUMTER COUNTY SHERIFF'S DEPT.; <br> SHERIFF ANTHONY DENNIS; <br> DEP ALEXANDER DUKES; <br> DEP RON AVALLONE; <br> CITY OFFICER CURTIS HODGE; AND <br> DEP S. SHUMPERT, <br><br> Defendants, | ) Civil Action No. 3:06-3385-CMC-JRM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **MAGISTRATE JUDGE'S** <br> ) **REPORT AND RECOMMENDATION** <br> ) <br> ) |

Plaintiff filed this action on December 1, 2006.[1] At the time, he was an inmate at the Evans Correctional Institution of the South Carolina Department of Corrections ("SCDC"). Plaintiff has been released from SCDC custody. Defendants Sumter County Sheriff's Department ("SCSD"), former SCSD police officer Ron Avallone ("Avallone"), SCSD Sheriff Anthony Dennis ("Dennis"), SCSD Sergeant Alexander Dukes ("Dukes"), former SCSD Senior Corporal Steven Schumpert ("Schumpert"),[2] and Sumter County (collectively "the County Defendants") filed a motion for summary judgment on June 1, 2007. Defendants Sumter City Police Department police officer Curtis Hodge ("Hodge") and the Sumter City Police Department (collectively "the City

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] The correct spelling of this defendant's last name is "Schumpert." See Schumpert Aff. (Attachment to County Defendants' Motion for Summary Judgment).

Defendants") also filed a motion for summary judgment on June 1, 2007. Because Plaintiff is proceeding pro se, he was advised on June 7, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motions for summary judgment could result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order. On September 6, 2007, the undersigned issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. On September 21, 2007, Plaintiff filed a reply in which he merely states:

> I [] do hereby wish to advise the Court that I wish to continue to prosecute this action. My complaint remains as I previously alleged against the defendants. During my arrest excessive force was administered and I was injured in the process.

Doc. 54.

## DISCUSSION

On February 3, 2005, Plaintiff, who is a former SCSD deputy, was arrested after a long vehicle chase. After being stopped by deputies one time, he backed his vehicle up and continued to flee. The second time he was stopped, Plaintiff fled from his vehicle into the woods. He was taken into custody after a struggle. Another struggle ensued as Plaintiff was being moved from a City police vehicle to a County vehicle. Plaintiff was taken to jail. He was later treated at Tuomey Hospital and released. Tickets were issued charging Plaintiff with failure to stop for a blue light, resisting arrest, and assaulting a police officer (Schumpert) while resisting arrest. See Avallone Aff., Exhibit C (tickets). Plaintiff was also charged with driving under suspended license - third offense and simple possession of marijuana. Plaintiff plead guilty to failure to stop for a blue light and received an eighteen month sentence.

Plaintiff alleges that Defendants' actions during his arrest constituted police brutality and excessive force. He also claims that Defendants committed "intentional perjury." Complaint at 2. Plaintiff claims that Defendants used excessive force in arresting him and that they lied by saying that he attempted to run over Schumpert with his vehicle which caused Plaintiff to be placed in a higher custody level. He requests that his allegations be properly investigated and that action be taken against the officer involved to compensate him. Complaint at 5.

The County Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to state a claim against Sumter County; (2) Defendants, in their official capacities, are not amenable to suit under 42 U.S.C. § 1983 and are immune under the Eleventh Amendment; (3) Plaintiff fails to establish personal involvement by Sheriff Dennis or a claim of supervisory liability against Dennis;[3] (4) Plaintiff fails to establish that they violated his Fourth Amendment rights as the use of force was reasonable under the circumstances; (5) Defendants are entitled to qualified immunity; and (6) Plaintiff cannot state a claim under the South Carolina Tort Claims Act ("SCTCA") and any state law claims should be dismissed. The City Defendants contend that they

---

[3]The doctrine of respondeat superior generally is inapplicable to § 1983 actions, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982); Wright v. Smith, 21 F.3d 496 (2d Cir. 1994); and Howard v. Federal Bureau of Prisons, 1999 WL 798883, 198 F.3d 236 (4th Cir. 1999)[Table]. Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff alleges that Sheriff Dennis requested that a high bail be set. Dennis state that he recommended that a high bond be set so Plaintiff would not be a threat to the public prior to the resolution of his charges. Dennis Aff., Para. 8. Plaintiff, who was released on bond the day after his arrest (see County Defendants' Motion for Summary Judgment, Ex. D), fails to show how this violated his constitutional rights.

are entitled to summary judgment because: (1) the Sumter City Police Department is not a legal entity or "person" amenable to suit under § 1983; (2) Plaintiff has failed to state facts sufficient to constitute a cause of action against the Sumter City Police Department; (3) Plaintiff fails to prove facts sufficient to constitute an action for excessive force under the Fourth Amendment; (4) the City Defendants are entitled to qualified immunity; and (5) if the Complaint alleges any state law claims against the City Defendants, Plaintiff has failed to prove facts sufficient to support them.

    1.    <u>Sumter City Police Department</u>

The Sumter City Police Department contends that it is not a legal entity or "person" amenable to suit under 42 U.S.C. § 1983. Buildings, walls, and fences do not act under color of state law. <u>See</u> <u>Allison v. California Adult Authority</u>, 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under § 1983). Buildings and correctional institutions, like sheriff's departments and police departments, are not usually considered legal entities subject to suit. <u>See, e.g.</u>, <u>Martinez v. Winner</u>, 771 F.2d 424, 444 (10th Cir. 1985)(Denver Police Department not a separate suable entity), vacating and remanding for consideration of mootness, 475 U.S. 1138 (1986); <u>Post v. City of Fort Lauderdale</u>, 750 F. Supp. 1131 (S.D.Fla. 1990); <u>Shelby v. City of Atlanta</u>, 578 F. Supp. 1368, 1370 (N.D.Ga. 1984); <u>Brooks v. Pembroke City Jail</u>, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989)(§ 1983 claims are directed at "persons" and a jail is clearly not a person amenable to suit). Hence, the Sumter City Police Department is not a "person" subject to suit under 42 U.S.C. § 1983.

Even if the Sumter City Police Department is "person" subject to suit under 1983, Plaintiff fails to state facts sufficient to constitute a cause of action against it. He has not asserted any claims against Sumter City Police Department, other than the acts of its officers. Plaintiff cannot establish

4

that Sumter City Police Department is liable for the acts of its employees under a respondeat superior theory based on the facts alleged. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Spell v. McDaniel, 824 F .2d 1380 (4th Cir.1987).

    2.    Sumter County

Defendant Sumter County contends that Plaintiff fails to state a claim against it because it is not responsible for the Sheriff of Sumter County. The South Carolina Supreme Court has found that neither the Sheriff nor his deputies are considered county employees, but instead are state employees. Heath v. Aiken County, 368 S.E.2d 904 (S.C. 1988); Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992). Further, deputies are not employees of the county, and thus not covered by county personnel policies and procedure. Heath, 368 S.E.2d at 906. Plaintiff has not established any connection between Sumter County and the actions of the individual County Defendants in this action. Further, Plaintiff has not made any specific allegations against Sumter County.

    3.    Excessive Force/Fourth Amendment Claim

Plaintiff alleges that Defendants used excessive force against him in the process of arresting him. Specifically he claims that Avallone assaulted him while he was handcuffed. He also claims that Hodge used a taser on him while he was handcuffed. The City Defendants contend that they are entitled to summary judgment because Plaintiff committed severe crimes, he posed a serious threat to the safety of officers and others, and he was actively resisting arrest and attempting to evade arrest by flight. The County Defendants contend that Plaintiff cannot establish a Fourth Amendment violation because the use of force was reasonable under the circumstances. They argue that Plaintiff's own testimony indicates that he refused to obey orders of officers and testimony of the officers and videos from police vehicles show that Plaintiff was resisting arrest. Additionally,

5

the County Defendants contend that there has been a judicial determination that Plaintiff was resisting arrest because a facially valid warrant was issued by a magistrate.[4]

Defendants provide that on February 3, 2005, a call was made over police radios regarding a suspicious vehicle. Schumpert heard that SCSD Deputy Skinner was involved in a pursuit of the vehicle after the suspect refused to stop. Schumpert caught up with Skinner to assist him in trying to stop the suspect. Schumpert and Skinner were able to corner the suspect (later identified as Plaintiff) in a field. See Schumpert Aff., Paras 6-9; Avallone Aff., Paras. 4-6; County Defendants' Ex. A (Video from Skinner's Vehicle).

Skinner and Schumpert gave Plaintiff commands to get out of his vehicle, but Plaintiff started backing up to get away. As Schumpert followed Plaintiff, Plaintiff put his vehicle into drive. Schumpert claims that Plaintiff started coming straight at him and had to dive out of the way to keep from being hit by Plaintiff's vehicle. See Schumpert Aff., Paras. 10-11; County Defendants' Ex. A.  The pursuit continued. Avallone caught up with the chase and followed Skinner. Avallone Aff., Para. 9; see also County Defendants' Ex. B (video from Avallone's vehicle). As the chase headed toward the City of Sumter, the SCSD sought the assistance of the City Police in apprehending Plaintiff. Officer Hodge attempted to stop Plaintiff by placing stop-sticks in the roadway. Plaintiff evaded the stop-sticks on two occasions and continued to flee. The City officers then joined in the pursuit. See Hodge Aff., Paras. 2-4.

Plaintiff finally turned into a field, got out of his car, and ran into nearby woods. It was nighttime and the woods were thick with briars and undergrowth. City Officer Sanders was the first officer to make physical contact with Plaintiff. Sanders tackled Plaintiff in an attempt to subdue

---

[4]On February 3, 2005, a warrant was issued on the charges of resisting arrest and assault. Schumpert Aff., Ex. E.

6

Plaintiff, but Plaintiff actively resisted Sanders. A SCSD officer used mace on Plaintiff in order to subdue him. Plaintiff had Sanders in a headlock and City Officer Hodge tried to release Sanders by pulling on him, but was not successful. Hodge dropped his knee into Plaintiff's side in an effort to get Plaintiff to release Sanders. Plaintiff brought up his hand with a dark object in it. Someone yelled that Plaintiff had a gun and City police officer Allen stunned Plaintiff with a taser. The dark object in Plaintiff's hand turned out to be his wallet. Hodge Aff., Paras. 6-9; Allen Aff., Paras. 7-9; Avallone Aff., Paras. 13-17; Schumpert Aff., Paras. 16-19

Plaintiff was initially placed into Sanders' vehicle. He was later moved to Avallone's vehicle to be transported to the detention center. As Avallone patted Plaintiff down, he noticed what appeared to be something in a plastic bag in Plaintiff's hand. Avallone ordered Plaintiff to let it go and Plaintiff refused. A struggle ensued and Avallone and Plaintiff ended up on the ground. Hodge used his taser against Plaintiff to attempt to bring him under control. See Avallone Aff., Paras. 19-24; Hodge Aff., Paras. 10-12; Schumpert Aff., Paras. 23-27.

At the detention center, Avallone noticed that Plaintiff had a plastic bag in his mouth which Plaintiff tried to swallow. Avallone noticed the plastic bag was still in Plaintiff's mouth and was able to get it from him. A green leafy substance that appeared to be marijuana was taken from Plaintiff. Plaintiff was transported to Tuomey Hospital where he was treated and released. See Avallone Aff., Para. 27; County Defendants' Ex. C (records from Tuomey Hospital).

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. Graham v. Connor, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "balanc[ing] the nature and quality of the intrusion on the individual's

7

Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985)(quoting United States v. Place, 462 U.S. 696, 703 (1983), see also Lester v. City of Chicago, 830 F.2d 706, 711 (7th Cir. 1987). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. Garner, 471 U.S. at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). In striking this balance, due regard must be given to the fact that police officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. See Lester, 830 F.2d at 712; see also Garner, 471 U.S. at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The court must also consider the extent of the injuries caused to the plaintiff. See Jones v. Buchanan, 325 F.3d 520, 530-31 (4th Cir. 2003)(internal citations omitted); see also Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002). The reasonableness of the officers' use of force must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (recognizing that the police must often make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving").

     The standard of "reasonableness" under the Fourth Amendment is wholly objective; the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation. Scott v. United States, 436 U.S. 128, 137-38 (1977); see Terry v. Ohio, 392 U.S. 1, 21-22 (in assessing the

reasonableness of a particular search or seizure "it is imperative that the facts be judged against an objective standard"). Subjectively bad intentions on the part of the individual officer will not make a constitutional violation out of an otherwise reasonable seizure; nor will subjectively good intentions render an objectively unreasonable seizure constitutional. Id.; see Lester, 830 F.2d at 712. The clearly established standard for the use of excessive force at the time of this incident was whether a reasonable officer in the defendants' place could have had probable cause to believe that the plaintiff posed a threat of serious harm to others. See Garner, 471 U.S. at 11.

  Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them. First, it is undisputed that Plaintiff, driving his vehicle, engaged police officers in an extended vehicle chase. Plaintiff admits that he was guilty of failure to stop for blue lights. See Plaintiff's Letter (Attachment to Complaint) at 1. When cornered, Plaintiff put his hands up as if he was surrendering, and then drove away, engaging police officers in another extended vehicle chase. When cornered a second time, Plaintiff ran away from police officers into the woods. Second, it appears that Plaintiff posed an immediate threat to the safety of offers and others as he was involved in two high-speed chases fleeing from officers. Officers were concerned when Plaintiff continued to resist while in handcuffs because Plaintiff was a former Sheriff's Deputy and he knew the department's procedures. William Self Aff., Para. 10. Third, Plaintiff appeared to be actively resisting arrest or attempting to evade arrest by flight by failing to stop for the officers. Plaintiff did not comply with instructions the first time he was cornered and ran from his vehicle the second time he was cornered. Plaintiff admits that he was attempting to get up at the time that he alleges that Dukes put a knee in his back. Plaintiff's Letter at 2. He admits that he actively concealed a bag of marijuana, tightened his grip on the plastic bag when officers requested that he

9

turn it over, and transferred the plastic bag to his mouth to conceal it. Plaintiff's Letter at 2-3. On the video from Defendant Avallone's vehicle, officers can be heard repeatedly telling Plaintiff to stay down, suggesting that he continued to resist officers. See County Defendants' Ex. B.

Additionally, Plaintiff fails to show more than de minimis injury. Richie v. Jackson, 98 F.3d 1335, 1996 WL 585152, *2 (4th Cir. 1996)[Table]; Joos v. Ratliff, 97 F.3d 1125, 1126 (8th Cir.1996) (per curiam) ("de minimis" amount of force in effecting an arrest would be insufficient to create constitutional issue). Where a plaintiff can point to no evidence of visible injury at the time of the incident and can point to no medical evidence of serious lasting injuries caused by any alleged use of force, a plaintiff's unsubstantiated claims of permanent injury are entitled to little weight. See Foster v. Metropolitan Airports Comm'r, 914 F.2d 1076, 1082 (8th Cir.1990)(claims of nerve damage and pain, without medical records establishing long-term injury, insufficient to demonstrate use of excessive force). Where a plaintiff's claims of serious injury are entitled to little weight, so are his claims of excessive force. Cooper v. City of Virginia Beach, 817 F. Supp. 1310, 1318 (E.D.Va.1993) ("lasting or serious injury" must be proven to escape summary judgment in excessive force case), aff'd, 21 F.3d 421 (4th Cir.1994) [Table].

Plaintiff alleges that his ribs were injured and his neck was "burning" after the incident. He has, however, presented no evidence to support any claims that he suffered any permanent or long-term injury. Plaintiff was treated at Tuomey Hospital after he was arrested. The final diagnosis was left chest wall contusion, facial erythema secondary to pepper spray, and superficial abrasions to multiple extremities. X-rays were negative for any acute intrathoracic process with no evidence of rib fracture or abnormality. County Defendants' Motion for Summary Judgment, Ex. C.

4. Perjury

Plaintiff alleges that Schumpert lied on his incident report and at the preliminary hearing when he stated that Plaintiff attempted to run over Schumpert with Plaintiff's vehicle. Complaint at 3. He claims this affected his custody level at SCDC because he had a detainer on him for assault with intent to kill.

The County Defendants argue that Plaintiff makes vague allegations of perjury against Schumpert, but there is no proof of the claim and Plaintiff fails to state a constitutional claim. Schumpert states that he does not recall if he testified at the preliminary hearing, but if he did it was consistent with his affidavit and he did not give false testimony. In his affidavit, Schumpert states that he and Deputy Skinner boxed the suspect (Plaintiff) in a field; they exited their vehicles and drew their weapons, they gave the suspect commands to stop the vehicle and get out of the vehicle; the suspect raised his hands as if he was surrendering; the suspect then started backing up his vehicle to try and get away; Schumpert followed the suspect with his gun drawn, while telling the suspect to stop and get out of the vehicle; the suspect put his vehicle into drive, pressed down on the accelerator, and started coming straight at Schumpert; and Schumpert had to dive out of the way to keep from being hit by the suspect's vehicle. Schumpert Aff., Paras. 9-11.

Plaintiff alleges that he was placed in level 2 custody at SCDC instead of a lower level based on a detainer resulting from Schumpert's alleged perjury. Plaintiff fails to show a constitutional violation concerning his custody placement. Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S.

215 (1976). In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 483. In <u>Sandin</u>, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>Id.</u> at 485. Under the analysis set forth in <u>Sandin</u>, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. <u>Id.</u> at 483-85; see <u>Backey v. South Carolina Dep't. of Corrections</u>, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996) [Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); <u>Joseph v. Gillespie</u>, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); <u>Reffritt v. Nixon</u>, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), <u>aff'd</u>, 121 F.3d 699 (4th Cir. 1997). Further, to the extent that Plaintiff's allegations of perjury would invalidate his sentence or pending charges, his claims may be barred under <u>Heck v. Humphrey</u>.[5] Plaintiff claims he asked that

---

[5]The Supreme Court, in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based. The court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

(continued...)

12

the assault with intent to kill charge be expunged (Plaintiff's Letter at 6), but has presented no evidence that this has been done.

Plaintiff claims that his allegations are supported by video and transcripts from his preliminary hearing. He has, however, not submitted those transcripts. Although the video from Skinner's vehicle only shows the scene from one direction and thus only shows part of the incident, there is nothing in it to contradict Schumpert's version of the events. The video shows two deputies exiting their vehicles and approaching Plaintiff's vehicle. Plaintiff then backs his vehicle up rather than complying with the deputies' instructions. A deputy walks towards the side of his vehicle and Plaintiff's vehicle is later seen exiting the scene.

5. <u>Immunity</u>

Defendants Avallone, Dukes, Schumpert, and Dennis contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case

---

[5](...continued)
a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id.</u> at 487.

of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

In Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd mem., 878 F.2d 379 (4th Cir. 1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials. The court applied South Carolina common law principles of the master and servant relationship and concluded that sheriffs are state officials. Id. at 954-955. The Fourth Circuit concluded, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state official, was immune from suit for monetary damages under § 1983. Id. at 1332. Further, in Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore under state, not county, control. Gulledge, supra; see also Heath v. Aiken County, 368 S.E.2d 904 (S.C. 1988). In Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992), the South Carolina Supreme Court cited Gulledge with approval and specifically held that South Carolina sheriffs and their deputies

are state officials for § 1983 purposes. Defendants Avallone, Dukes, Schumpert, and Dennis were employed by the SCSD at the time of the alleged incidents. Thus, Defendants Avallone, Dukes, Schumpert, and Dennis are entitled to Eleventh Amendment immunity from damages in their official capacities.

The individual defendants contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants Dennis, Dukes, Avallone, Hodge, and Schumpert violated any of his clearly established constitutional or statutory rights. Therefore, these Defendants are entitled to qualified immunity in their individual capacities.

15

      6.      <u>State Law Claims</u>

The County Defendants contend that Plaintiff cannot state a claim under the SCTCA, such that any state law claim should be dismissed. The City Defendants contend that if the Complaint alleges any state law claims against them, Plaintiff has failed to prove facts sufficient to support them. It is unclear whether Plaintiff is attempting to assert claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

<u>CONCLUSION</u>

Based on review of the record, it is recommended that the motion of summary judgment of Defendants Avallone, Dennis, Dukes, Schumpert, Sumter County Sheriff's Department, and Sumter County (Doc. 45) be granted and that the motion for summary judgment of Defendants Hodge and Sumter City Police (Doc. 46) be granted.

                                                        Respectfully submitted,

                                                        s/Joseph R. McCrorey
                                                        United States Magistrate Judge

February 13, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).